ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-40149-JAR |
| ) | |
| FRANCISCO SOTO-ALANIS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM ORDER

This matter comes before the Court on defendant Francisco Soto-Alanis's Motion to Suppress Evidence (Doc. 26), Motion for Discovery Related to Drug Detection Dog (Doc. 27), and Supplement to Motion to Suppress (Doc. 31).[1]  The Court held a hearing on defendant's motions on April 7, 2008.  Having reviewed the parties' filings and the evidence adduced at the hearing, the Court is prepared to rule.  For the reasons stated below, defendant's motion to suppress evidence is denied and defendant's motion for discovery related to drug detection dog is granted in part and denied in part.

**I.   Factual Background**

On June 29, 2007, Investigator Gregg Swanson of the Saline Count Sheriff's Department, was conducting surveillance of a house in Salina, Kansas suspected to house members of a narcotics ring.  Swanson has been in the Sheriff's Department for over seventeen years and has been assigned to the Drug Enforcement Agency's ("DEA") drug task for over two years.  Iris

---

[1]At the evidentiary hearing, the Court orally found defendant's Motion to Compel Discovery Regarding Informant  (Doc. 28) moot as the requests had been satisfied by the government's response.

Carillo was the known target of the investigation, and investigators knew that members of her family and other associates were working with her. Investigators knew that Carillo employed other members of her organization to drive with the drugs and money. They knew that one of these members was a Hispanic male named Francisco. While conducting surveillance, Swanson noticed a white Ford pickup truck that was registered to Carillo arrive at the house. It was parked outside the house for about fifteen to twenty minutes before defendant, a Hispanic male, drove away in it. Swanson followed the pickup truck in his undercover vehicle on East Cloud Street and requested assistance from Salina M.P. Officer Lane Mangels, who Swanson was aware traveled with a drug detection dog and was close to the area.

 Mangels caught up to the pickup truck and Swanson followed from several cars behind. Both officers witnessed the driver commit traffic violations. Swanson testified that defendant did not use a turn signal to change lanes before turning left from East Cloud onto South Ohio Street. Swanson also observed defendant fail to signal prior to a lane change from the left to right lane on the 1000 block of Ohio Street. During this time, Swanson and Mangels were in contact by phone. Mangels also saw both traffic infractions. Mangels testified that defendant moved into the left turn lane at the South Ohio and East Cloud intersection, but that he did not turn on his left turn signal until he was stopped at the light. Mangels continued to follow behind the pickup truck and observed defendant change from the left to right lane on South Ohio without turning on his signal prior to the lane change. Instead, defendant activated the turn signal after he had started the lane change. The officers decided to stop the vehicle.

 Swanson parked some distance away from the stop to avoid being seen given the undercover nature of his investigation, and Mangels requested assistance. Mangels approached

the vehicle and explained to defendant why he was being stopped.  Defendant provided Mangels with his driver's license, insurance, and registration and Mangels told him that he was going to go check on these documents and would be right back.  At that point, Mangels switched his radio to "channel 2" to contact dispatch but found that it was busy with other traffic.  Mangels then retrieved his canine from his vehicle about the time that the dispatch channel became free.  Mangels provided dispatch with defendant's driver's license and registration information.

Mangels and his canine, Baron, received their narcotics detection canine certification for marijuana, cocaine, methamphetamine, and heroin on September 8, 2006.  Mangels testified that the canine has not suffered any injuries or illnesses since they have been together and that the last time the canine's accuracy was measured, in late 2007, he had a 71% accuracy measurement.  Mangels allowed his canine to sniff the pickup truck while he waited on a reply from dispatch.  Mangels walked the canine around the exterior of the truck, presenting the various sides of the truck to the canine.  The canine alerted by sniffing the bottom seam of the driver's door.  The canine then scratched this area and tried to jump into the driver's side window, which Mangels testified was consistent with how the canine is trained to alert to the smell of narcotics.  After the alert, dispatched relayed information to Mangels, and Mangels returned the canine to his vehicle.

Mangels returned to the pickup truck and asked defendant if there was anything illegal in the vehicle.  Defendant responded "no," and proceeded to consent to a search of the pickup truck.  Defendant got out of the vehicle.  Upon searching inside the truck, Mangels immediately noticed a set of scales in the storage compartment on the driver's side door.  When Mangels removed the scales, he noticed a white powder residue on them.  Mangels also testified that defendant consented to a search of his person.  Mangels began by patting down defendant's

exterior and noticed what he believed was a methamphetamine pipe in defendant's pocket. Defendant stated that it was chapstick, but Mangels believed the shape of the object was not consistent with chapstick, based on his training and experience. Mangels pulled a sandwich baggie out of the pocket containing a white substance. Defendant told Mangels it was "ice." At this point, Mangels awaited other offficers to complete the search.

After defendant was taken into custody, Swanson approached and conducted a further search of defendant's person. Swanson found a second baggie containing a white substance in the coin pocket of defendant's trousers. Later, a third officer, Officer Tomson, placed defendant in the police vehicle and removed his boot, in which he found a third baggie containing a white substance. The evidence obtained during this traffic stop forms the basis of Count 1 of the Indictment.

## II.     Motion for Discovery Related to Drug Detection Dog

In his motion, defendant requests discovery of a number of items relating to the training and performance of the canine used by Officer Mangels to conduct the dog sniff of the vehicle. At the evidentiary hearing, counsel for defendant stated that she had just been provided with discovery about the drug detection dog and requested an additional week to supplement the motion to suppress based on the information in that discovery. The Court granted this request and defendant supplemented the motion to suppress based on this information.

Defendant requests a number of items in his discovery motion. Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution."[2] Absent some additional showing of materiality by defendant, he is entitled to no more than the training and certification records for the specific dog in question during a reasonable period.[3] The government produced the canine's certification and field performance records, as well as reports that illustrate the canine's reliability rate but declined to produce the other items requested in defendant's motion, such as "copies of police dispatch logs related to calls for the drug detection dog utilized in the instant case and his handler." The Court agrees that all that is required in this case is the discovery already produced by the government. No showing has been made by defendant that further discovery is required. To be sure, the discovery provided has been sufficient to allow defendant to supplement his motion to suppress based on his argument that the dog is not sufficiently reliable. Therefore, this motion is granted insofar as it requires production of certification and training records, along with any reports that demonstrate the dog's reliability rate. The remainder of the motion is denied.

### III.    Motion to Suppress

"'A traffic stop is a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.'"[4] The principles of *Terry v. Ohio*[5] apply to such traffic stops. Thus, the reasonableness of a stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related

---

[2] 373 U.S. 83, 87 (1963).

[3] *See United States v. Lambert*, 351 F. Supp. 2d 1154, 1162 (D. Kan. 2004).

[4] *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further quotation omitted)).

[5] 392 U.S. 1 (1968).

in scope to the circumstances which justified the interference in the first place."[6]  Defendant argues for suppression because (1) the initial stop was not justified at its inception, (2) the resulting detention was unlawfully extended, and (3) the drug detection dog did not provide probable cause to search the vehicle.  The Court addresses each in turn.

### A.     *The Initial Stop*

Tenth Circuit cases establish that "a detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile."[7]  Reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error.[8]  The officers stopped defendant, believing the vehicle violated K.S.A. § 8-1548(a) and (b):

> (a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.
> (b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

The Court finds both Swanson's and Mangels' testimony credible and consistent that defendant violated this statute twice before Mangels stopped him.  While defendant denies committing this infraction in his motion, he has offered no such proof.  As such, the Court finds that the stop was justified at its inception; and the officers had an objectively reasonable suspicion that a traffic violation occurred before stopping defendant's vehicle.

---

[6]*Id*. at 19–20.

[7]*United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003); *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

[8]*United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).

### B.     *Length of Detention*

Even if the initial stop of defendant's vehicle was legitimate, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place," as required under *Terry*.[9]  "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop."[10]  However, "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation."[11]  Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay.[12]

Defendant argues in his motion that Mangels' use of the drug detection dog prior to running a computer check through dispatch unlawfully prolonged the stop.  In *Illinois v. Caballes*,[13] the Supreme Court considered whether the use of a drug detection dog unreasonably prolonged a traffic stop.  The Court accepted the state court's conclusion that "the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop."[14]  The Court proceeded to explain that "a dog sniff would not change the character

---

[9] *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002); *United States v. Bustillos-Munoz*, 235 F.3d 505, 512 (10th Cir. 2000), *cert. denied*, 534 U.S. 854 (2001).

[10] *United States v. Cervine*, 347 F.3d 865, 870–71 (10th Cir. 2003) (internal quotation omitted); *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999).

[11] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001); *see Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.").

[12] *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[13] 543 U.S. 405 (2005).

[14] *Id.* at 408.

of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy."[15]

The evidence presented at the hearing shows that during the time that Mangels employed the drug detection dog, he was waiting to hear back from dispatch about defendant's license and registration—a permissible task to be completed by an officer during a traffic stop.  Mangels testified that dispatch contacted him with this information at about the same time that he was returning the dog to his vehicle.  There is no indication that Mangels' use of the dog in itself prolonged the detention.  The evidence shows that Mangels' use of the drug detection dog to sniff the exterior of defendant's vehicle in this case is on all fours with the *Caballas* decision, as the stop was not extended beyond the time reasonably necessary to request vehicle registration and a driver's license, run a computer check, and ask about vehicle ownership.

### C.    *Probable Cause Based on Dog Sniff*

It is well-settled that a canine alert to the presence of drugs in a lawfully detained vehicle alone will establish probable cause to search the interior of that vehicle.[16]  However, the Tenth Circuit also recognizes that "a dog alert might not give probable cause if the particular dog has a poor accuracy record."[17]  Defendant argues that the reliability reports about this dog show a poor accuracy record and the sniff is therefore not sufficiently reliable to establish probable cause.

First, defendant points to Mangels' testimony at the hearing that the dog's accuracy rate

---

[15]*Id.*

[16]*See, e.g.*, *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005); *United States v. Carter*, 64 F. Appx. 109, 114 (10th Cir. 2003); *United States v. Ludwig*, 10 F.3d at 1527–28 (10th Cir. 1993).

[17]*Ludwig*, 10 F.3d at 1538.

is only 71%, compared with the dog in *Ludwig* that had never falsely alerted. But the Tenth Circuit did not set a standard in *Ludwig* that in order to be reliable, a dog must have never falsely alerted. In fact, the Tenth Circuit has since stated that "a 70-80% success rate meets the liberal standard for probable cause established in *Gates*."[18]

> [W]ith a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill. When the annual certification process involves actual field testing and grading of the canine's drug-detection skills . . . the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance."[19]

Defendant states that the records show a number of instances when Baron did not indicate or alert until Mangels "presented" the area to him, and upon indication, rewarded Baron. Defendant argues that this practice raises questions about whether the dog was trained to alert to the odor of narcotics, or is instead hoping for a reward.

The Court has reviewed the training records attached to defendant's supplement. These records indicate that Baron was certified, trained, and practiced regularly—on average one day per week. It is clear from these records that Mangels is trained to "present" the dog to certain areas where he wants the canine to sniff. There are some instances where Baron was rewarded if he then alerted correctly in the presented area. But there are also numerous instances where the dog was presented with an area to sniff and was not rewarded upon a correct alert or indication. Often, the dog was rewarded upon a positive alert even if Mangels had not presented the area to

---

[18]*United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997), *cert. denied*, 525 U.S. 863 (1998) (discussing dog with 71% accuracy rate in instances where records were kept).

[19]*Id.* (quoting *United States v. Wood*, 915 F. Supp. 1126, 1136 n.2 (D. Kan. 1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997)).

him in the first instance.  The evidence presented at the hearing also shows Baron was presented with the pickup truck in the manner in which he was routinely trained.

In one instance, a training record recalls that Mangels presented Baron to an area where a Kong ball was hidden, the same ball Mangels uses as a reward for Baron.  When Baron attempted to grab the ball, Mangels corrected him and then walked him around the rest of the training room.  The next time Mangels walked him past the ball, Baron did not try to grab it.  This is one example tending to show that Baron was trained to smell narcotics and not respond to his reward.  In sum, none of the records attached to the supplement suggest that Baron was unreliable.  Instead, they show that he was sufficiently reliable to establish probable cause based on his certification and training records.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Suppress Evidence (Doc. 26) is denied and defendant's Motion for Discovery Related to Drug Detection Dog (Doc. 27) is granted in part and denied in part, as described above.

**IT IS SO ORDERED**.

Dated this  28th  April, 2008.

  S/ Julie A. Robinson
Julie A. Robinson
United States District Judge